# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 21, 2013      Decided January 31, 2014

No. 13-5080

KIM S. WESTBERG, HUSBAND, AND LAVERNE V. WESTBERG, WIFE,
APPELLANTS

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER
FOR AND ON BEHALF OF SILVER STATE BANK, AND MULTIBANK
2009-1 RES-ADC VENTURE, LLC,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-01690)

———

*Christopher Alan LaVoy* argued the cause for the appellants.

*Kathleen V. Gunning*, Counsel, Federal Deposit Insurance Corporation, argued the cause for the appellees. *Colleen J. Boles*, Assistant General Counsel, *Kathryn R. Norcross*, Senior Counsel, *John B. Isbister* and *Jaime W. Luse* were on brief.

Before: HENDERSON, BROWN and GRIFFITH, *Circuit Judges*.

KAREN LECRAFT HENDERSON, *Circuit Judge*: In May 2008, Kim and Laverne Westberg (Westbergs) obtained a residential construction loan from Silver State Bank (Silver State), located in Henderson, Nevada. Silver State collapsed shortly thereafter and the Federal Deposit Insurance Corporation (FDIC) was appointed as receiver. The FDIC repudiated the loan agreement but notified the Westbergs that they were obligated to continue making payments on the portion of the loan that had been disbursed to them before Silver State's failure. The Westbergs brought suit in district court seeking, *inter alia*, a declaratory judgment that the FDIC's repudiation relieved them of any obligation to continue making loan payments. The FDIC subsequently assigned its interest in the loan to Multibank 2009-1 RES-ADC Venture, LLC (Multibank) and the Westbergs amended their complaint to add Multibank as a defendant. The district court dismissed the Westbergs' claim for declaratory relief against Multibank for lack of subject matter jurisdiction, concluding that their claim was subject to the administrative exhaustion requirement set forth in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (FIRREA or Act), and that they did not exhaust that administrative remedy. We affirm.

## I. Background

### A

The Congress enacted FIRREA "in the midst of the savings and loan insolvency crisis to enable the FDIC . . . to expeditiously wind up the affairs of literally hundreds of failed financial institutions throughout the country." *Freeman v. FDIC*, 56 F.3d 1394, 1398 (D.C. Cir. 1995) (citing H.R. REP.

No. 101-54(I), *reprinted in* 1989 U.S.C.C.A.N. 86, 87, 103). FIRREA confers broad powers on the FDIC in its capacity as receiver for failed depository institutions. *See id.* at 1398–99. Its powers include the authority to repudiate any contract "(A) to which [the failed] institution is a party; (B) the performance of which the [FDIC], in [its] discretion, determines to be burdensome; and (C) the disaffirmance or repudiation of which the [FDIC] determines, in [its] discretion, will promote the orderly administration of the institution's affairs." 12 U.S.C. § 1821(e)(1); *see also Nashville Lodging Co. v. Resolution Trust Corp.*, 59 F.3d 236, 241 (D.C. Cir. 1995).

FIRREA also authorizes the FDIC to adjudicate creditors' claims against failed depository institutions for which the FDIC has been appointed receiver. *See* 12 U.S.C. § 1821(d)(3)–(13); *see also Freeman*, 56 F.3d at 1399–1400 (summarizing administrative claims process). FIRREA includes a broadly worded limitation on judicial review:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> > (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
> >
> > (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D). The "[e]xcept as otherwise provided" clause refers back to section 1821(d)(6), "which

provides for administrative determination of 'any claim against a depository institution for which the [FDIC] is receiver' and thereafter for adjudication in district court." *Auction Co. of Am. v. FDIC*, 141 F.3d 1198, 1200 (D.C. Cir. 1998) (quoting 12 U.S.C. § 1821(d)(6)(A)(i)). We have read sections 1821(d)(6) & (13)(D) together "as setting forth a 'standard exhaustion requirement'" that "'routes claims through an administrative review process, and . . . withholds judicial review unless and until claims are so routed.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1141 (D.C. Cir. 2011) (quoting *Auction Co. of Am.*, 141 F.3d at 1200); *accord Freeman*, 56 F.3d at 1400 ("The effect of these provisions, read together, is to require anyone bringing a claim against or seeking a determination of rights with respect to the assets of a failed bank held by the FDIC as receiver to first exhaust administrative remedies by filing an administrative claim under the FDIC's administrative claims process." (quotation marks omitted)). This is a jurisdictional exhaustion requirement that we cannot excuse. *See Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004).

**B**

Pursuant to a loan agreement, a promissory note and a deed of trust (collectively, "Loan Documents"), the Westbergs obtained a loan in the principal amount of $1,318,000 from Silver State to build a house in Gilbert, Arizona. The Loan Documents provided for periodic loan amounts as construction progressed. On September 5, 2008, the FDIC notified the Westbergs that Silver State had been closed and that the FDIC had been appointed as receiver. As of that date, Silver State had disbursed $171,510.95 to the Westbergs and the Westbergs had fully complied with their obligations under the terms of the Loan Documents.

On April 21, 2009, the FDIC-as-receiver notified the Westbergs that it had elected to repudiate the loan agreement pursuant to 12 U.S.C. § 1821(e). The notice letter specified that the Westbergs were obligated to continue making payments "[w]ith respect to any outstanding balance previously funded"—*i.e.*, the balance owing on the $171,510.95 the Westbergs had already received. Joint Appendix (JA) 57. The notice letter also warned that if they failed to file a proof of claim by the specified bar date, their failure would result in disallowance of any claim and waiver of further rights and remedies. On June 18, 2009, the Westbergs submitted a proof of claim on the FDIC's standard form. The claim sought compensation for costs resulting from the construction delays caused by the FDIC's repudiation. Notably, however, the Westbergs' administrative claim did not seek to be relieved of their obligation to repay the loan amount already disbursed to them. By letter dated July 6, 2009, the FDIC notified the Westbergs that their damages claim had been disallowed and that they had 60 days to file a lawsuit.

On September 3, 2009, the Westbergs filed a complaint against the FDIC in the district court for the District of Columbia. Count One sought a declaratory judgment that the FDIC's repudiation of the loan agreement released the Westbergs from the obligation to repay the loan amount already disbursed to them; Count Two sought damages resulting from the FDIC's repudiation, including alleged project delay costs. On February 9, 2010, the FDIC assigned its rights, title and interest in the Westbergs' loan to Multibank. Multibank maintained the FDIC's position that the Westbergs were obligated to repay the previously disbursed portion of the loan.

On July 19, 2010, the Westbergs filed an amended complaint adding Multibank as a defendant on Count One but not Count Two. The district court granted the FDIC's motion to dismiss the Westbergs' claims against it, *Westberg v. FDIC*, 759 F. Supp. 2d 38, 45, 48 (D.D.C. 2011), and the Westbergs do not appeal that decision. The district court denied Multibank's motion to dismiss, however, because Multibank had submitted only a brief joinder to the FDIC's motion, failing to explain how the FDIC's arguments applied to the Westbergs' claim against Multibank. *Id.* at 45–46. After the Westbergs and Multibank cross-moved for summary judgment, the district court *sua sponte* raised the issue of administrative exhaustion and instructed the parties to file supplemental briefs. On February 26, 2013, the district court dismissed the Westbergs' claim against Multibank for lack of subject matter jurisdiction, concluding that they were required to exhaust their administrative remedies but had not done so. *Westberg v. FDIC*, 926 F. Supp. 2d 61, 64 (D.D.C. 2013). The Westbergs timely appealed.

## II.  Analysis

We review *de novo* the district court's dismissal for lack of subject matter jurisdiction. *Benoit v. U.S. Dep't of Agric.*, 608 F.3d 17, 20 (D.C. Cir. 2010). Our review of the district court's statutory interpretation is also *de novo*. *United States v. Moore*, 703 F.3d 562, 572–73 (D.C. Cir. 2012). We first address whether the Westbergs are required to exhaust their claim for declaratory relief and then turn to whether they have done so.

## A. Is Exhaustion Required?

As already noted, 12 U.S.C. § 1821(d)(13)(D) is a broadly worded limitation on judicial review of causes of action that have not first been pursued in the administrative review process. *See Am. Nat'l Ins. Co.*, 642 F.3d at 1141; *Auction Co. of Am.*, 141 F.3d at 1200; *Freeman*, 56 F.3d at 1400. It has two subsections. Subsection (i) covers "any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver." 12 U.S.C. § 1821(d)(13)(D)(i). Subsection (ii) covers "any claim relating to any act or omission of such institution or the [FDIC] as receiver." *Id.* § 1821(d)(13)(D)(ii). The parties vie over which subsection governs our analysis. Although the district court analyzed the issue under subsection (i), *see Westberg*, 926 F. Supp. 2d at 66 & n.3, we think subsection (ii) governs here. Because Multibank now owns all rights to repayment from the Westbergs under the Loan Documents, the Westbergs' request for declaratory relief against Multibank is no longer an "action seeking a determination of rights with respect to[] the assets *of any depository institution for which the [FDIC] has been appointed receiver*." 12 U.S.C. § 1821(d)(13)(D)(i) (emphasis added). It is instead an action seeking a determination of rights with respect to the assets of a third-party that purchased those assets from the FDIC. The Westbergs' claim does, however, "relat[e] to an[] act or omission of . . . the [FDIC] as receiver"—namely, the FDIC's decision to repudiate the loan. *Id.* § 1821(d)(13)(D)(ii).

Subsection (i) seems the more relevant provision at first blush: It applies to "any claim or action for payment" *or* "any

action seeking a determination of rights" and the latter phrase more naturally describes a declaratory judgment action than does subsection (ii), which applies to "any claim." We have held, however, that "claim" as used in FIRREA "is a term-of-art that encompasses only demands that are resolvable through the administrative process set out by FIRREA," *Am. Nat'l Ins. Co.*, 642 F.3d at 1142, and that declaratory relief against the FDIC is obtainable through the administrative process, *see Freeman*, 56 F.3d at 1400, 1404; *see also Placida Prof'l Ctr., LLC v. FDIC*, 512 F. App'x 938, 947 n.9 (11th Cir. 2013); *Hudson United Bank v. Chase Manhattan Bank of Conn., N.A.*, 43 F.3d 843, 844, 848–49 (3d Cir. 1994). Thus, subsection (ii)'s reference to "any claim" includes a request for declaratory relief.[1] The question is whether declaratory relief remains obtainable through the administrative process if sought against a third-party acquiring bank like Multibank, rather than the FDIC. If so, the request would fit within the definition of "claim" in subsection (ii) and judicial review would be precluded absent administrative exhaustion. *See Am. Nat'l Ins. Co.*, 642 F.3d at 1142 ("[D]emands unresolvable through the process are not 'claims,' as the term is used in the Act."); *see also Auction Co. of Am.*, 141 F.3d at 1200–01 (section 1821(d)(13)(D) applies to same claims resolvable in

---

[1] The Westbergs argue subsection (ii)'s use of "claim" cannot include a claim for declaratory relief because, if that were so, subsection (i)'s separation of "claim or action for payment" and "action seeking a determination of rights" would give two different scopes to "claim." To wit: the first in subsection (i) would not encompass declaratory relief and the second in subsection (ii) would. Subsection (i) refers specifically to "any claim or action *for payment*." Subsection (ii)'s use of "claim," however, refers broadly to "*any* claim relating to *any* act or omission" of the failed institution or the FDIC.

administrative process); *Homeland Stores, Inc. v. Resolution Trust Corp.*, 17 F.3d 1269, 1274 (10th Cir. 1994) (same).

The applicability of the administrative exhaustion requirement in subsection (ii) is based not on the entity named as defendant but on the actor responsible for the alleged wrongdoing:  "Where a claim is *functionally*, albeit not *formally*, against a depository institution for which the FDIC is receiver, it is a 'claim' within the meaning of FIRREA's administrative claims process."  *Am. Nat'l Ins. Co.*, 642 F.3d at 1144; *accord Acosta-Ramirez v. Banco Popular de P.R.*, 712 F.3d 14, 20–21 (1st Cir. 2013); *Farnik v. FDIC*, 707 F.3d 717, 722–23 (7th Cir. 2013); *Tellado v. IndyMac Mortg. Servs.*, 707 F.3d 275, 280–81 (3d Cir. 2013); *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1214–15 (9th Cir. 2012); *Vill. of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 386 (6th Cir. 2008).  The functional approach ensures "that plaintiffs cannot circumvent FIRREA's jurisdictional bar by drafting their complaint strategically," *Am. Nat'l Ins. Co.*, 642 F.3d at 1144; *see also Farnik*, 707 F.3d at 723 ("[S]trategic case captioning would allow creditors to completely bypass FIRREA's administrative process . . . ."), and thus undermine the Congress's goal of enabling the FDIC to expeditiously wind up the affairs of failed financial institutions, *see Freeman*, 56 F.3d at 1398; *see also Vill. of Oakwood*, 539 F.3d at 386 (contrary approach would "encourage the very litigation that FIRREA aimed to avoid" (quotation marks omitted)).

A few cases illustrate how the functional approach has been applied.  During the recent financial crisis, Washington Mutual Bank was seized by a federal agency, the Office of Thrift Supervision, and placed into receivership with the FDIC.  In *American National Insurance Co. v. FDIC*, Washington Mutual bondholders brought state tort claims

against JPMorgan Chase & Co. (JPMC), alleging that it had pressured the FDIC to sell Washington Mutual's most valuable assets to JPMC at a drastically undervalued price. 642 F.3d 1137, 1138–40 (D.C. Cir. 2011). We held that "[b]ecause appellants' suit is against a third-party bank for its own wrongdoing, not against the depository institution for which the FDIC is receiver (i.e., Washington Mutual), their suit is not a claim within the meaning of the Act and thus is not barred by subsection (ii)." *Id.* at 1142. Notwithstanding the FDIC's actions may have "form[ed] one link in the causal chain connecting JPMC's wrongdoing with appellants' injuries," we concluded that the bondholders' suit was functionally against JPMC for its wrongdoing. *Id.* at 1144. Accordingly, the bondholders were not required to exhaust their claims. *Id.* at 1144–45.

On the other hand, in *Village of Oakwood v. State Bank & Trust Co.*, uninsured depositors of a failed bank sued another bank ("assuming bank") that had purchased the failed bank's assets from the FDIC-as-receiver. 539 F.3d 373, 375–76 (6th Cir. 2008). The suit alleged that *the FDIC* had breached its fiduciary duty to depositors, but the assuming bank, not the FDIC, was the named defendant. *Id.* Although the plaintiffs alleged that the assuming bank had aided and abetted the FDIC's breach, the Sixth Circuit held that plaintiffs' claim was functionally against the FDIC because the FDIC was the primary wrongdoer. *Id.* at 386 ("[A]ll of [plaintiffs'] claims against [the assuming bank] are directly related to acts or omissions of the FDIC as the receiver of [the failed bank]."). Exhaustion was therefore required. *Id.* at 388. In *American National Insurance Co.*, we found the two cases factually distinguishable because "in *Village of Oakwood* the wrongdoing alleged was perpetrated by the FDIC-as-receiver, which the assuming bank allegedly aided and abetted,"

whereas in *American National Insurance Co.*, the alleged wrongdoing was perpetrated by JPMC. *Am. Nat'l Ins. Co.*, 642 F.3d at 1144.

Similarly, in *Tellado v. IndyMac Mortgage Services*, the plaintiffs had obtained a mortgage loan from IndyMac Bank, FSB (IndyMac) before IndyMac's failure. 707 F.3d 275, 277–78 (3d Cir. 2013). After IndyMac entered into FDIC receivership and the FDIC sold the loan to OneWest Bank, FSB (OneWest), the plaintiffs sued OneWest seeking to cancel the loan. *Id.* Their claim, however, was based on *IndyMac's* alleged failure to provide adequate notice (under state law) of their right to cancel the loan and ultimately the Third Circuit held that the claim was functionally against IndyMac. *Id.* at 280. Notably, although OneWest had refused the plaintiffs' pre-suit request to cancel the loan, the court rejected the argument that its refusal made the claim functionally against OneWest, finding instead that their claim was "wholly dependent upon IndyMac's wrongdoing"—*i.e.*, IndyMac's failure to provide adequate notice. *Id.* Exhaustion was thus required. *Id.* at 281.[2]

---

[2] *See also Acosta-Ramirez*, 712 F.3d at 15, 21 (exhaustion required where former employees of failed bank sued assuming bank for severance pay but claim was functionally against FDIC-as-receiver for its decisions to terminate employees and to not transfer liability for severance pay to assuming bank); *Farnik*, 707 F.3d at 719–20, 723–24 (exhaustion required where plaintiffs who borrowed from failed bank sued assuming bank but their claims were based on failed bank's alleged deceptive practices and complaint did not identify any independent wrongdoing by assuming bank); *Benson*, 673 F.3d at 1208–09, 1215 (exhaustion required where investors in Ponzi scheme, which scheme failed bank allegedly aided and abetted, brought suit against assuming bank but their claims were "based almost exclusively on alleged malfeasance by" failed bank).

This case is more like *Village of Oakwood* and *Tellado* than it is like *American National Insurance Co*. The Westbergs' complaint seeks "a declaration that *the FDIC's* repudiation of the [loan agreement] released and discharged Plaintiffs from any and all obligations under the [Loan Documents]." First Amended Complaint (FAC), *Westberg v. FDIC*, No. 09-cv-1690 ¶ 28 (D.D.C. July 19, 2010) (reprinted at JA 24) (emphasis added). The claim is based on the FDIC-as-receiver's act of repudiating the loan because, without that act, the Westbergs would not have sought a declaration freeing them from having to repay the already disbursed portion of the loan. Functionally, the claim "relat[es] to an[] act . . . of . . . the [FDIC] as receiver." 12 U.S.C. § 1821(d)(13)(D)(ii).

The Westbergs argue that their claim relates not to the FDIC's repudiation of the loan agreement but rather to "Multibank's discretionary call about how to interpret and respond to [the repudiation] after acquiring the loan." Brief of Appellants 24, *Westberg v. FDIC*, No. 13-5080 (D.C. Cir. July 15, 2013). Their contention is belied by their pleadings, which make no mention of a discretionary call by Multibank but simply state: "Because Multibank has no greater rights than the FDIC from which it acquired the Loan, Plaintiffs are entitled to the same declaration as to Multibank." FAC ¶ 28 (reprinted at JA 25) (capitalization altered). Moreover, the argument is similar to the plaintiffs' unavailing contention in *Tellado* that the assuming bank's failure to cancel the loan based on the acts of its predecessor-in-interest constituted an independent act that changed the functional analysis. *See Tellado*, 707 F.3d at 280. It might be a different story if the FDIC had not repudiated the loan and Multibank had instead purchased the loan from the FDIC intact and then itself

repudiated or breached the agreement. In that case, the Westbergs' claim would be functionally against Multibank. Here, however, the Westbergs' claim for declaratory relief is inextricably related to the FDIC's act of repudiation. Although it is formally brought against Multibank, it is functionally against the FDIC. It is therefore a "claim" under subsection (ii) that must first be resolved in the administrative claims process. *See Am. Nat'l Ins. Co.*, 642 F.3d at 1142.[3]

---

[3] As the Westbergs point out, we have construed the claims process broadly only where either the failed depository institution or the FDIC "might be held legally responsible to pay or otherwise resolve the asserted claim" because, if neither bears any legal responsibility, "the claims process offers only a pointless bureaucratic exercise" and "we doubt Congress intended to force claimants into a process incapable of resolving their claims." *Am. Nat'l Ins. Co.*, 642 F.3d at 1143. But whether the Westbergs correctly contend that the FDIC's declaration would not bind Multibank, *see* Brief of Appellants 21–22, *Westberg v. FDIC*, No. 13-5080 (D.C. Cir. July 15, 2013)—an issue we do not reach—the administrative claims process is not a pointless bureaucratic exercise here. At the time the Westbergs brought their administrative claim, the FDIC still held its interest in the loan. The FDIC did not assign that interest to Multibank until February 2010—eight months after the Westbergs filed their administrative claim, seven months after the FDIC resolved that claim and five months after the Westbergs filed suit in the district court. Had the Westbergs timely sought declaratory relief through the administrative process, the FDIC would have resolved that request well before it assigned the loan to Multibank. To allow the Westbergs to circumvent FIRREA's exhaustion requirement by declining to pursue the remedies available to them and later arguing that such remedies are ineffective because of their own delay would amount to permitting the strategic pleading we have rejected. *See Am. Nat'l Ins. Co.*, 642 F.3d at 1144; *see also Benson*, 673 F.3d at 1213 ("Although plaintiffs assert that their claims are not currently susceptible to the claims process, plaintiffs give us no reason to believe that FIRREA exhaustion

## B.  Have the Westbergs Exhausted?

Having concluded that administrative exhaustion is required, we have little difficulty concluding that the Westbergs have failed to meet the requirement.  Although they filed a timely proof of claim with the FDIC, their claim requested only damages for construction delays.  *See* JA 59–65.  Their claim made no mention of the declaratory relief the Westbergs now seek nor could anything in the claim fairly be construed to put the FDIC on notice that the Westbergs challenged its conclusion that repudiation of the loan agreement did not erase the Westbergs' duty to repay the previously disbursed amount.  Because the Westbergs failed to route their claim for declaratory relief through the administrative review process, section 1821(d)(13)(D)(ii) withholds judicial review of that claim.  *See Auction Co. of Am.*, 141 F.3d at 1200; *Freeman*, 56 F.3d at 1400.  Their reliance on *Sims v. Apfel*, 530 U.S. 103 (2000), is misplaced.  That case deals with the failure to raise specific *issues* in an administrative appeal, *see id.* at 105–06, whereas the Westbergs failed to press an entirely separate claim.  *See McGlothlin v. Resolution Trust Corp.*, 913 F. Supp. 15, 18–19 (D.D.C. 1996) (under section 1821(d)(13)(D), plaintiffs' claims based on negligence and breach of contract not exhausted where not submitted to administrative process, despite fact that separate claim for fraudulent inducement was submitted), *aff'd*, 111 F.3d 963 (D.C. Cir. 1997) (per curiam) (mem.); *see also BHC Interim Funding II, L.P. v. FDIC*, 851 F. Supp. 2d 131, 138–39 (D.D.C. 2012) (similar, collecting cases).

---

would have been futile had they submitted them within the appropriate time frame.").

15

Because the Westbergs failed to administratively exhaust their claim for declaratory relief, the district court correctly dismissed their action for lack of subject matter jurisdiction and we affirm.[4]

*So ordered.*

---

[4] We reject the Westbergs' argument that dismissal of their claim for failure to exhaust violates due process. We agree that the FDIC's proof-of-claim form—which has subsequently been amended, *see* Appellees' Rule 28(j) Letter, *Westberg v. FDIC*, No. 13-5080 (D.C. Cir. Nov. 25, 2013)—was, in one provision, incorrect. *See* JA 60 ("If the institution does not currently owe you any money, it is not necessary for you to complete this form."). But due process requires only that the Westbergs be "afforded notice of their exclusive opportunity to present their claims," which notice must be "'reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Freeman*, 56 F.3d at 1403 n.2 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The FDIC gave the Westbergs adequate notice when it informed them of its repudiation of the loan, specified that it expected the Westbergs to repay the previously disbursed amount and stated: "You may determine that the [FDIC's] decision to disaffirm the Loan Agreement gives you a claim against the receivership estate. If so, you must file a Proof of Claim in writing . . . . **Under federal law, . . . failure to file claims by the Claims Bar Date will result in disallowance by the [FDIC], the disallowance will be final, and further rights or remedies with regard to claims will be barred.**" JA 58 (emphases in original).