IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-1055

Filed: 6 December 2016

Yancey County, No. 10 CVS 279

SETTLERS EDGE HOLDING COMPANY, LLC; MOUNTAIN AIR DEVELOPMENT CORPORATION; VIRGINIA A. BANKS; WILLIAM R. BANKS; JEANI H. BANKS; MICHAEL R. WATSON; SHEREE B. WATSON; VIRGINIA A. BANKS, WILLIAM R. BANKS, AND SHEREE B. WATSON IN THEIR CAPACITY AS TRUSTEES OF WILLIAM A. BANKS REVOCABLE TRUST; MORRIS ATKINS IN HIS CAPACITY AS TRUSTEE OF WILLIAM BANKS FAMILY IRREVOCABLE TRUST NUMBER 1; AND MORRIS ATKINS IN HIS CAPACITY AS TRUSTEE OF WILILAM BANKS FAMILY IRREVOCABLE TRUST NUMBER 2, Plaintiffs-Appellants,

v.

RES-NC SETTLERS EDGE, LLC, Defendant-Appellee.

Appeal by plaintiffs from orders entered 4 November 2013 and 28 May 2015 by Judges Mark Powell and Marvin P. Pope in Superior Court, Yancey County. Heard in the Court of Appeals 10 February 2016.

*Rayburn Cooper & Durham, P.A., by G. Kirkland Hardymon, Ross R. Fulton, and Benjamin E. Shook, for plaintiffs-appellants.*

*Nelson Mullins Riley & Scarborough, LLP, by Christopher J. Blake and D. Martin Warf, for defendant-appellee.*

STROUD, Judge.

Plaintiffs appeal from the trial court's 4 November 2013 order granting defendant RES-NC Settlers Edge, LLC's motion for partial summary judgment and from the order entered 28 May 2015 granting defendant's motion for lack of subject

matter jurisdiction and denying plaintiffs' motion for summary judgment. On appeal, plaintiffs argue that the trial court erred in striking their affirmative defenses for lack of subject matter jurisdiction, not granting collateral estoppel effect to a prior foreclosure order, and in granting summary judgment in favor of defendant while denying summary judgment in favor of plaintiffs. After review, we find that in this case, the FDIC effectively repudiated the loan contract by refusing to fund the draw requests yet failed to give plaintiffs proper notice of the repudiation. With proper notice, plaintiffs could have asserted an administrative claim for damages. Although the trial court would lack jurisdiction for any affirmative claim by plaintiffs for damages, plaintiffs did not bring any claim for damages, and the trial court does have jurisdiction to consider defendant's counterclaim and thus plaintiffs' affirmative defenses to that counterclaim.

Although plaintiffs cannot recover damages from defendant, plaintiffs' affirmative defenses raise the issue of recoupment. Defendant has not demonstrated any genuine issue of material fact and all of the evidence, taken in the light most favorable to defendant, shows that the FDIC effectively repudiated plaintiff Settlers Edge's loan contract, but this does not necessarily require judgment forgiving the loan entirely. Instead, there are genuine issues of material fact as to the amount of recoupment, if any, plaintiffs are entitled to, based upon defendant's repudiation of the loan contract. Accordingly, plaintiffs' affirmative defense of repudiation raised

the issue of recoupment based upon defendant's repudiation of the loan contract. Because there are questions of material fact as to recoupment, we reverse and remand for further proceedings to determine the amount of damages, if any, defendant may recover from plaintiffs on its claim for breach of contract after deduction of any damages proven by plaintiffs.

I.     Background

Plaintiffs' complaint set forth the following facts.  Plaintiff Settlers Edge ("Settlers Edge") is a limited liability company organized in 2007 to develop and maintain Mountain Air Country Club and residential lots on a parcel of real property ("the Property") in Yancey County, North Carolina.  In June 2007, Settlers Edge secured a $15,500,000.00 loan from Integrity Bank in Georgia to finance the construction of Mountain Air Country Club on the Property.  A material term of the financing agreement between Settlers Edge and Integrity Bank was that "Settlers Edge would receive funding for the approximately $7 million in construction and carrying expenses necessary to develop the Property into marketable lots with utilities and amenities.  This funding took the form of monthly loan draw requests submitted by Settlers Edge to Integrity Bank."

Integrity Bank funded the development of the Property with the monthly loan draws as agreed from 20 June 2007 through 28 August 2008, but then on 29 August 2008, Integrity Bank was placed under the receivership of the Federal Deposit

Insurance Corporation ("FDIC"), which assumed all of its assets and obligations. On 19 September 2008, Settlers Edge submitted a draw request for the month of August for $41,677.20. The FDIC refused to disburse the requested funds. After several attempts to get the FDIC to pay the loan draw, Settlers Edge sent a formal written notice and demand through counsel to the FDIC stating that it was in "material breach" of its obligations and demanding performance. The FDIC never responded. At some point before 27 October 2009, "the FDIC caused a substitute trustee to be appointed to institute foreclosure proceedings on the Deed of Trust."

In the foreclosure proceeding, plaintiffs herein raised the defense of material breach of the loan agreement by the FDIC. The Yancey County Clerk of Superior Court entered an order on 11 February 2010 denying the FDIC's request for foreclosure, finding plaintiffs were "not in default under the Loan Documents," so the FDIC did not "have the right to institute foreclosure proceedings against the property described in the Deed of Trust." The FDIC then "appealed the ruling, then claimed to have assigned all of its rights, title and interest in the Development Financing to a new entity, Multibank 2009-1 RES-ADC Venture, LLC ('Multibank')." Multibank eventually "claim[ed] to have assigned its right, title and interest in the Development Financing to defendant RES-NC." The FDIC, through RES-NC[1], after being assigned

---

[1] We use the FDIC and defendant RES-NC interchangeably throughout the body of this opinion, as defendant RES-NC eventually stepped in the shoes of the FDIC when it was assigned the FDIC's rights, title, and interest in the Development Financing agreement.

the rights to the Development Financing from Multibank, dismissed the FDIC's appeal to the Yancey County Superior Court on 6 May 2010.

On 15 October 2010, plaintiffs filed this action for a declaratory judgment, claiming:

> that (a) the FDIC committed a material breach of the terms of the Construction Loan Agreement; (b) that pursuant to North Carolina law, this material breach excused their further performance under the various component agreements which comprise the Development Financing; (c) that this issue has been previously litigated and actually adjudicated and that RES-NC is collaterally stopped from re-litigating this issue; and (d) that Plaintiffs have no obligation to pay RES-NC any funds.

Defendant filed its answer and counterclaim on 31 July 2013, denying the allegations in plaintiffs' complaint and asserting as affirmative defenses that the Yancey County Clerk of Court's order has no preclusive effect and that the Yancey County Clerk of Court lacked jurisdiction or authority to enter an order excusing plaintiffs' performance under the loan agreement. Defendant also alleged a counterclaim for breach of contract against plaintiffs to recover the full amount of the loan, plus fees and interest.

Defendant filed a motion for partial summary judgment on 19 September 2013 asserting that there were "[n]o genuine issues of material fact" regarding plaintiffs' material breach and collateral estoppel claims and defendant's affirmative defenses. Furthermore, defendant stated that the claims and defenses "are legal issues that

require no discovery and are ripe for adjudication by the Court." On 30 September 2013, plaintiffs filed their reply to defendant's counterclaim, arguing that defendant's counterclaim fails to state a claim upon which relief can be granted and asserting the following affirmative defenses: 1) material breach of contract; 2) counterclaim barred under Equal Credit Opportunity Act ("ECOA"); 3) laches; 4) estoppel; 5) waiver; 6) release; 7) unclean hands; 8) repudiation; 9) material modification and release; 10) failure to mitigate damages; 11) collateral estoppel and res judicata; 12) lack of standing and not the real party in interest; 13) lack of consideration; and 14) reservation of any additional defenses that may be revealed during discovery or after receiving additional information.

After a hearing on 7 October 2013, the trial court entered an order on 4 November 2013 granting defendant's motion for partial summary judgment. The court concluded that defendant's claim was not precluded by the Yancey County Clerk of Court's order denying foreclosure and that the order "does not have preclusive effect with respect to the issues of (a) whether the FDIC breached the loan documents; (b) whether the FDIC's breach was material; and (c) whether Plaintiffs' obligations to Defendant under the loan documents are excused." Plaintiffs filed a notice of appeal from the court's order on 4 December 2013, but their appeal was dismissed as interlocutory by this Court on 16 December 2014.

On 14 May 2015, defendant filed a motion to dismiss plaintiffs' declaratory judgment for lack of subject matter jurisdiction and motion for summary judgment as to defendant's counterclaim. In support of the motion to dismiss for lack of subject matter jurisdiction, defendant argued that the trial court lacked jurisdiction "over Plaintiffs' claims as a matter of federal law under the requirements of 12 U.S.C. § 1821(d)(13)(D)." Defendant also asked for summary judgment, alleging that there was no genuine issue of material fact regarding (a) plaintiffs' default of the loan, (b) plaintiffs' failure to repay any amounts borrowed under the loan, and (c) plaintiffs indebtedness to defendant "in the total outstanding amount of $20,523,921.31."

On 15 May 2015, plaintiffs also filed a motion for summary judgment, noting that:

> 1.  Plaintiffs commenced this action by filing their Complaint against Defendant . . . on October 15, 2010 seeking a declaratory judgment that, due to the prior material breach by the Defendant's predecessor-in-interest, Plaintiffs were excused from further performance under the loan documents at issue in this case.
>
> 2.  Following consolidation of this action with a separate action commenced by Defendant in the Superior Court for Alexander County, North Carolina, Defendant filed its Answer and Counterclaim on July 31, 2013 seeking to recover from Plaintiffs based on Plaintiffs' alleged breach of the Loan Documents at issue.
>
> 3.  On or about September 30, 2013, Plaintiffs filed their Reply to Defendants Counterclaims and asserted, among others, affirmative defenses based on (1) the prior material breach of the loan documents by Defendant's

predecessor-in-interest, (2) the repudiation of the loan documents by Defendant's predecessor-in-interest, and (3) the material modification of the underlying loan obligation.

4.     Pursuant to Rule 56 of the North Carolina Rules of Civil Procedure, "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits . . . show that there is no genuine issue as to any material fact," and that Defendant is entitled to judgment dismissing Defendant's Counterclaim in its entirety as a matter of law based on the aforementioned defenses. N.C.R. Civ. P. 56 (2015).

The trial court heard the parties respective motions at a hearing on 25 May 2015 and subsequently entered an order and judgment on 28 May 2015 granting defendant's motion to dismiss for lack of subject matter jurisdiction and defendant's motion for summary judgment. Specifically, the court concluded:

1.     As a matter of federal law, under the requirements of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1821(d)(13)(D), this Court lacks subject matter jurisdiction over: (a) Plaintiffs' claim for declaratory relief set forth in Plaintiffs' Complaint in this action; and (b) Plaintiffs' First, Sixth, Eighth, Ninth, Tenth, and Eleventh Affirmative Defenses set forth in Plaintiffs' Reply to Counterclaim in this action. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is, therefore, GRANTED, and Plaintiffs' Complaint and the First, Sixth, Eighth, Ninth, Tenth, and Eleventh Affirmative Defenses set forth in Plaintiffs' Reply to Counterclaim are hereby DISMISSED.

2.     Defendant has established that there are no genuine issues of material fact with respect to its Counterclaim for breach of contract, and that Defendant is entitled to judgment as a matter of law. Plaintiffs have failed to raise any genuine issue of material fact with respect to

> Defendant's Counterclaim for breach of contract, or with respect to Plaintiffs' Second, Third, Fourth, Fifth, Seventh, Twelfth and Thirteenth Affirmative Defenses set forth in Plaintiffs' Reply to Counterclaim in this action. Defendant's Motion for Summary Judgment on its Counterclaim for breach of contract is, therefore, GRANTED.
>
> 3.    Plaintiffs are not entitled to summary judgment as a matter of law. Plaintiffs' Motion for Summary Judgment is, therefore, DENIED.

The court denied plaintiffs' motion for summary judgment and entered final judgment against plaintiffs on defendant's counterclaim, jointly and severally, for $20,523,921.31.  Plaintiffs filed a notice of appeal on 26 June 2015.

II.    FIRREA and Affirmative Defenses

Plaintiffs first argue on appeal that the trial court erred in striking their affirmative defenses for lack of subject matter jurisdiction and denied plaintiffs due process.  Specifically, plaintiffs contend that the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C.A. § 1821(d)(13)(D) (2014), upon which defendant and the trial court relied, does not bar affirmative defenses.

FIRREA sets out the authority and procedures for the FDIC to follow when a depository institution, such as Integrity Bank, becomes insolvent and grants the FDIC broad powers and duties as a "conservator or receiver" of the depository institution.  *See* 12 U.S.C.A. § 1821(d)(2)(A).  Generally, the FDIC becomes the "Successor to institution" and has "by operation of law":

> (i) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution; and
>
> (ii) title to the books, records, and assets of any previous conservator or other legal custodian of such institution.

*Id*.

The FDIC is granted authority, among other things, to "[o]perate the institution" (B); exercise the functions of any member, stockholder, director, or officer of the institution (C); take any actions "necessary to put the insured depository institution in a sound and solvent condition" (D); to liquidate the depository institution and "proceed to realize upon the assets of the institution" (E); and to pay "all valid obligations of the insured depository institution in accordance with the prescriptions and limitations of this chapter." (H). 12 U.S.C.A. § 1821(d)(2)(B)-(E), (H). In a case "involving the liquidation or winding up of the affairs of a closed depository institution," the receiver is required to

> (i) promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice; and
> (ii) republish such notice approximately 1 month and 2 months, respectively, after the publication under clause (i).

12 U.S.C.A. § 1821(d)(3)(B).

FIRREA also sets out the administrative process for a debtor to bring "any claim against a depository institution[.]" *See* 12 U.S.C.A. § 1821(d)(4)(A)- rulemaking authority. Thus, FIRREA contemplates that the claims arising out the failure of a depository institution will be resolved by the receiver, and if a debtor raises a claim against the institution, that claim will be determined in the federal administrative process established for this purpose. Therefore, judicial review by the courts is quite limited.

> (D) Limitation on judicial review
>
> Except as otherwise provided in this subsection, no court shall have jurisdiction over--
>
>> (i) any claim or *action for payment from*, <u>or</u> any action seeking a *determination of rights* with respect to, the *assets* of any *depository institution* for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>> (ii) any claim relating to *any act or omission of such institution* <u>or</u> the *Corporation* as receiver.

12 U.S.C.A. § 1821(d)(13)(D) (emphasis added).

Here, the FDIC was appointed as receiver for Integrity Bank on 29 August 2008 and assumed all of Integrity Bank's assets and liabilities at that time -- including the obligation to fund plaintiffs' draw requests. The FDIC sent a letter on 2 September 2008 informing Settlers Edge that Integrity Bank had been closed and

the FDIC had taken over as receiver. The FDIC suggested Settlers Edge seek refinancing of the loan documents. Settlers Edge submitted a draw request for August 2008 on 19 September 2008 for $41,677.20 and received no response from the FDIC. The FDIC sent additional letters on 20 October 2008 to the guarantors of Integrity Bank's loan to Settlers Edge notifying the guarantors that they had 30 days to strictly comply with the terms and provisions of the loan agreement. On 4 December 2008, Settlers Edge sent written notice to the FDIC of material breach.

Further, the exhibits submitted with the record on appeal include the "Supplemental Brief in Opposition to Foreclosure Proceeding" filed by Settlers Edge, which contains facts indicating that "the FDIC never took the good faith step of acknowledging the obligations it assumed from Integrity Bank, nor did it exercise its statutory right to 'repudiate' those obligations. Instead, the FDIC took a 'heads I win, tails you lose' position leaving Settlers Edge in limbo." Settlers Edge noted that in this case, "the FDIC made unsuccessful efforts to quickly sell off the Loan Documents with the goal of making the draw request funding the loan purchaser's problem. Doubtless, the FDIC also acted on the hope that Settlers Edge would either quietly accept this situation or that it would go bankrupt and that an appointed trustee would lack the resources to bring the estate's claims to recover for the breach."

In a deposition on 6 March 2015, William R. Banks, plaintiffs' representative, was asked whether Settlers Edge understood "that there was a deadline by which to

submit claims against the FDIC in connection with the receivership of Integrity Bank?" Mr. Banks replied, "Not to my knowledge." The record on appeal does not contain documents from that time period regarding when or whether plaintiffs received notice of the receivership or whether plaintiffs filed any claim as provided by statute. Plaintiffs filed this lawsuit on 31 July 2013.

Plaintiffs' declaratory judgment claim in this case does "seek[ ] a determination of rights," 12 U.S.C.A. § 1821(d)(13)(D), regarding the assets of the depository institution so this portion of Plaintiffs' claim would be barred by FIRREA. But plaintiffs argue that even if the declaratory judgment action is barred by FIRREA, their affirmative defenses to defendant's counterclaims are not. Plaintiffs sought to raise affirmative defenses of material breach and material modification to defendant's counterclaims seeking recovery *against Plaintiffs* for breach of contract.

Thus, plaintiffs contend that while the limitation of judicial review in 12 U.S.C.A. § 1821(d)(13)(D) applies to *claims* for payment or for a determination of rights against the receiver, it does not apply to plaintiffs' *affirmative defenses*. Although this issue has not been specifically addressed by a court in North Carolina, other states have dealt with similar cases. The results vary depending upon the facts and procedural postures of the cases, including rules which may be unique to the particular state. We have therefore sought to find cases which address the issue in a context which is most similar to this case. The Nevada Supreme Court considered

this issue in a similar context and determined that affirmative defenses are not barred. *See Schettler v. Ralron Capital Corp.*, 275 P.3d 933 (Nev. 2012). In *Schettler*, the defendant borrower and Silver State Bank

> executed a Business Loan Agreement (the Loan) and a Promissory Note (the Note), under which Silver State provided Schettler with a $2,000,000 revolving line of credit. Schettler agreed to pay interest on the loan monthly until the loan's maturity date, at which time he would be required to pay all outstanding principal and any remaining unpaid accrued interest. The original maturity date of the Loan and the Note was September 15, 2007. On that date, Schettler and Silver State entered into a Change in Terms Agreement that modified the maturity date to September 15, 2008. That same day, Schettler also executed a Commercial Guaranty in his capacity as Trustee for the Vincent T. Schettler Living Trust, guaranteeing to pay all of the Loan obligations. It is undisputed that the Loan, the Note, and the Commercial Guaranty (loan agreement) were valid and enforceable contracts at their inception.

*Id.* at 934-35.

On 14 August 2008, Silver State notified Schettler that it had frozen the funds remaining on the line of credit because of a change in his financial condition or that Silver State believed his "prospect of performance on the Note was impaired." *Id.* at 935. Silver State also informed Schettler that

> it had decided to cancel any current commitments until Schettler cured the defaults, but that until that time, Schettler was responsible for payment of interest on the loan. At the time of the default notice, however, Schettler was current on his payments, and the loan had an outstanding principal balance of $1,114,000.

*Id.* (quotation marks and brackets omitted).

A few weeks later, Silver State went into receivership and the FDIC was appointed as receiver. *Id.* RalRon later acquired Schettler's loan agreement and demanded full payment of principal, interest, and late fees from Schettler; upon Schettler's failure to pay, RalRon filed a lawsuit in Nevada state court seeking recovery upon the loan agreement. *Id.* Schettler filed an answer which raised several counterclaims and affirmative defenses for "breach of contract, breach of the implied covenant of good faith and fair dealing, and estoppel." *Id.* RalRon filed a motion for summary judgment on its claims for breaches of contract and personal guaranty, claiming that Schettler's counterclaims and affirmative defenses "were barred because Schettler failed to file any administrative claims with the FDIC as required by FIRREA, and that RalRon was a holder in due course immune from Schettler's defenses." *Id.* The trial court agreed and

> granted summary judgment in favor of RalRon on its claims for breach of contract and breach of personal guaranty. In so doing, the district court barred Schettler's affirmative defenses and dismissed his counterclaims, reasoning that, because they were all essentially claims against the FDIC and Schettler had failed to follow the claims administration process, they were barred by FIRREA.

*Id.* at 935-36.

Schettler appealed, and the Nevada Supreme Court reversed because it determined that Schettler's affirmative defenses were not barred by FIRREA and that genuine issues of material fact remained as to the determination of damages. *Id.* at 942. We find the Nevada court's rationale to be persuasive.

> Convincingly, a majority of courts addressing this issue have held that while FIRREA's jurisdictional bar applies to claims and counterclaims, it does not apply to defenses and affirmative defenses.
>
> The Third Circuit Court of Appeals, which has examined this issue in detail, has explained that FIRREA's jurisdictional bar only applies to four categories of actions:
>
> > (1) claims for payment from assets of any depository institution for which the FDIC has been appointed receiver; (2) actions for payment from assets of such depository institution; (3) actions seeking a determination of rights with respect to assets of such depository institution; and (4) a claim relating to any act or omission of such institution or the FDIC as receiver.
>
> The court held that these categories did not include a defense or an affirmative defense because those are neither an action nor a claim, but rather a *response* to an action or a claim. Therefore, it held, the jurisdictional bar contained in § 1821(d)(13)(D) does not apply to defenses or affirmative defenses. To support its conclusion, the court explained that interpreting FIRREA's jurisdictional bar to include defenses and affirmative defenses would, in a substantial number of cases, result in an unconstitutional deprivation of due process. Specifically, if parties were barred from presenting defenses and affirmative defenses to claims which have been filed against them, they would not only be unconstitutionally deprived of their

opportunity to be heard, but they would invariably lose on the merits of the claims brought against them. Beyond constitutional concerns, the court also explained that because a defendant is unable to know what his or her defense will be before hearing the claim, it seems that it would be nearly impossible for a party to submit future hypothetical defenses to the administrative claims procedure -- defenses to lawsuits which may not yet have been brought against a party or which may never be brought at all. We join in the majority's reasoning and conclude that while FIRREA's jurisdictional bar applies to claims and counterclaims, it does not apply to defenses or affirmative defenses.

*Id.* at 939-40 (citations, quotation marks, brackets, and ellipses omitted). *See also, e.g.*, *Nat'l Union Fire Ins. Co. v. City Savings, F.S.B.*, 28 F.3d 376, 393 (3d. Cir. 1994) ("[T]he plain meaning of the language contained in § 1821(d)(13)(D) indicates that the statute does not create a jurisdictional bar to defenses or affirmative defenses which a party seeks to raise in defending against a claim."); *Resolution Trust Corp. v. Love.*, 36 F.3d 972, 977-78 (10th Cir. 1994) ("[I]f Congress had intended to remove from the jurisdiction of the courts any and all actions, claims or defenses which might diminish the assets of any depository institution . . . or [which might] diminish or defeat any claims of the [FDIC] in any capacity, it would [have] been simple to so provide. But Congress did not so provide. Instead, the act gives the [FDIC] authority over any claim by a creditor or claim of security, preference or priority. *Clearly, an affirmative defense asserted by a defendant in an action brought by the [FDIC] is none of these.*" (Citations and quotation marks omitted) (Emphasis added)).

But plaintiffs argue that the FDIC's refusal to pay the monthly draws was essentially a repudiation of the agreement, although the FDIC did not formally repudiate the loan, even if it had a statutory right to repudiate the loan. Although the lender in *Schettler* similarly failed to fund his loan, repudiation was not specifically addressed in *Schettler*.[2] Under 12 U.S.C.A. § 1821, plaintiffs would have a limited right to recover in the administrative forum for repudiation of the loan. FIRREA provides the FDIC or a receiver does have "Authority to repudiate contracts":

> In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease--
>> (A) to which such institution is a party;
>> (B) the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and
>> (C) the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.

12 U.S.C.A. § 1821(e)(1)(A)-(C).

---

[2] In *Schettler*, Silver State announced that it would no longer perform under the contract on 14 August 2008, even before going into receivership, claiming concern over Schettler's ability to pay. 275 P.3d at 935. At the time of Silver State's default notice to Schettler, however, "Schettler was current on his payments, and the loan had an outstanding principal balance of $1,114,000." *Id.* Silver State was not placed into receivership until 5 September 2008, a few weeks after the default notice. *Id.* Here, the repudiation at issue occurred after Integrity Bank failed and the FDIC did have a right to repudiate plaintiffs' loan.

The conservator or receiver for an insured depository institution is required to "determine whether or not to exercise the rights of repudiation under this subsection within a reasonable period following such appointment." 12 U.S.C.A. § 1821(e)(2). Damages in a claim for repudiation are generally

> (i) limited to actual direct compensatory damages;
> and
> (ii) determined as of--
>> (I) the date of the appointment of the conservator or receiver; or
>> (II) in the case of any contract or agreement referred to in paragraph (8), the date of the disaffirmance or repudiation of such contract or agreement.

12 U.S.C.A. § 1821(e)(3)(A). The claimant cannot recover any "(i) punitive or exemplary damages; (ii) damages for lost profits or opportunity; or (iii) damages for pain and suffering." 12 U.S.C.A. § 1821(e)(3)(B). For repudiation of a "qualified financial contract[,]" compensatory damages are

> (i) deemed to include normal and reasonable costs of cover or other reasonable measures of damages utilized in the industries for such contract and agreement claims; and
> (ii) paid in accordance with this subsection and subsection (i) of this section except as otherwise specifically provided in this section.

12 U.S.C.A. § 1821(e)(3)(C).

In the present case, the FDIC did not *formally* repudiate the plaintiffs' loan but by its actions the FDIC repudiated the agreement by refusing to honor the terms of the loan agreement and to pay the monthly draws as required by the agreement.

*See* 12 U.S.C.A. § 1821(e) ("Provisions relating to contracts entered into before appointment of conservator or receiver"). In *Westberg v. F.D.I.C.*, 741 F.3d 1301 (D.C. Cir. 2014), the D.C. Circuit Court of Appeals addressed a situation somewhat similar to the one before us. The appellants, husband and wife, obtained a residential construction loan from a bank that soon collapsed. *Id.* at 1302. The FDIC was appointed as receiver and repudiated their loan agreement, "but notified the Westbergs that they were obligated to continue making payments on the portion of the loan that had been disbursed to them before [the bank]'s failure." *Id.* The D.C. Circuit found that "the Westbergs' claim for declaratory relief is inextricably related to the FDIC's act of repudiation. Although it is formally brought against Multibank, it is functionally against the FDIC. It is therefore a 'claim' . . . that must first be resolved in the administrative claims process." *Id.* at 1308. Therefore, while *Westberg* addresses repudiation, it involved a claim brought by the debtor against the bank, not an affirmative defense. Also, in *Westberg*, the FDIC *did* formally repudiate the contract, and the formal repudiation was important to the D.C. Circuit's holding that the claim should have been in the administrative process. *Id.* Here, by contrast, the FDIC never gave any notice of repudiation of the contract and plaintiffs have raised it as an affirmative defense to defendant RES-NC's counterclaim.

The FDIC did, however, effectively repudiate it by refusing to fund Settlers Edge's draw requests, which is quite similar to Silver State's action in *Schettler*. 275

P.3d at 935. *See also Lawson v. F.D.I.C.*, 3 F.3d 11, 15 (1st. Cir. 1993) ("In other words, the FDIC did not transfer the Lawsons' CD contracts intact to a new obligor; it effectively *repudiated* those contracts when it declined either to pay the promised interest itself or to oblige anyone else to do so. The repudiation may have been informal but there was certainly no ambiguity[.]"). Here, Settlers Edge submitted a draw request on 19 September 2008 for $41,677.20 for August 2008 and received no response from the FDIC. The FDIC refused to fill that request, and on 4 December 2008, Settlers Edge sent written notice to the FDIC of material breach. Thus, the question is whether the plaintiffs' rights are limited to those under 12 U.S.C.A. § 1821(e) where the FDIC has effectively repudiated the contract by its actions, although it failed to formally notify plaintiffs of repudiation. As in *Lawson*, the FDIC's actions here, though informal, clearly constituted a repudiation. *Id.* ("At the same time, it was a repudiation and breach of the contracts represented by the CDs since the FDIC, which had inherited the contracts, effectively declined to pay the promised interest in the future or commit Fleet Bank to do so.").

As no formal repudiation appears in the record on appeal and defendant seeks to recover damages from plaintiffs for breach of contract, plaintiffs were free to raise repudiation as an affirmative defense to defendant's counterclaim. The receiver cannot use FIRREA as both a sword and shield at the same time; if it wants the benefit of the limited damages and administrative procedure that FIRREA provides,

then it must "determine whether or not to exercise the rights of repudiation" under 12 U.S.C.A. § 1821(e)(2) "within a reasonable period" of its appointment and give notice of repudiation. Once the receiver has given notice of repudiation, then the debtor must proceed under FIRREA or lose its rights to assert any claims. The facts regarding the FDIC's actions as noted herein are undisputed, and the record does not show, nor does defendant argue, that any formal repudiation was ever made. It is also undisputed that the FDIC effectively repudiated the contract by its failure to pay the loan draw requests, so the trial court erred when it denied plaintiffs the opportunity to raise repudiation as an affirmative defense.

Although we have determined that the FDIC effectively repudiated the contract and that plaintiffs are entitled to raise the repudiation as an affirmative defense, the question remains of the proper remedy. Plaintiffs argue that the repudiation is a material breach which excuses them from any performance whatsoever under the loan contract and thus requires dismissal of defendant's counterclaim for breach of contract. But this argument ignores the fact that the FDIC did have a right to repudiate the loan contract and that a debtor's right to recover damages, even if properly brought as an administrative claim under FIRREA, is limited.

In *Schettler*, the Nevada court addressed how the debtor's affirmative defense may be used to offset any claim by the lender and determined that on remand the

trial court must consider recoupment. 275 P.3d at 941-42. Neither plaintiffs nor defendant specifically requested recoupment here, but the same was true in *Schettler*. *Id.* at 941, n. 7. The Nevada court noted that fair notice of the defense was raised by the pleadings in *Schettler*, and the same is true here. *Id.* ("Although Schettler did not specifically allege that he was entitled to 'recoupment' in his answer to RalRon's complaint, when construed as a whole, his answer sufficiently encompassed the concept of recoupment. Recoupment must be plead affirmatively, and if it is not raised it is ordinarily deemed waived. However, if a plaintiff had notice that a defendant was relying on recoupment, the affirmative defense will be allowed. Fair notice was given because it was specifically raised on reconsideration, which is a part of the issues on appeal. Accordingly, we will not treat recoupment as waived." (Citations, quotation marks, and brackets omitted)).

> Recoupment is a right of the defendant to have a deduction from the amount of the plaintiff's damages, for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under the same contract. Recoupment must arise out of the same transaction and involve the same parties; thus, it does not apply when the defendant's allegations arise out of a transaction extrinsic to the plaintiff's cause of action. While the defendant may thus defend against the plaintiff's claim by asserting competing rights arising out of the same transaction and thereby extinguish or reduce any judgment awarded to the plaintiff, recoupment does not allow the defendant to pursue damages in excess of the plaintiff's judgment award. Thus, by its very nature and regardless of whether the same facts could constitute a separate claim for damages, recoupment seeks to challenge

> the foundation of the plaintiff's claim and, consequently, we recognize recoupment as an affirmative defense not barred by FIRREA. Here, based on his allegations, Schettler may be able to demonstrate that he is entitled to recoup against any amount awarded RalRon on its claims, up to the amount awarded.

*Id.* at 941 (citations, quotation marks, and brackets omitted).

Recoupment has not been addressed as extensively or recently in North Carolina as in Nevada, but North Carolina's law of recoupment is essentially the same.

> A recoupment is a defence by which a defendant, when sued for a debt or damages, might recoup the damages suffered by himself from any breach by the plaintiff of the *same contract*. And . . . it [has been] held that where a justice has jurisdiction of the principal matter of an action, he also has jurisdiction of incidental questions necessary to its determination, and hence may even admit an equity to be set up as a defence.
>
> There are many resemblances and dissimilarities between these several defences. In a counter-claim to an action upon a contract, where a judgment is prayed against the defendant, he may recover the excess, if any. If no judgment or relief is prayed, it is a set-off, if it is a claim distinct from and independent of the action. But if it is a matter growing out of or connected with the subject of the action, then it is recoupment.
>
> In our case the defendants pleaded "set-off and counter-claim," but they demanded no relief against the plaintiffs, and the defense set up arose out of the contract set forth in the complaint, and their defence therefore fell under the head of recoupment.

*Hurst v. Everett*, 91 N.C. 399, 404-05 (1884) (citations omitted).

Recoupment is limited to a set-off against the defendant's counterclaim, so plaintiffs cannot recover any damages, even if they were to present evidence of greater damages than what they would owe on defendant's counterclaim for breach of contract. In addition, since defendant had a legal right to repudiate the loan agreement, the measure of damages which plaintiffs may assert as recoupment should be limited by the compensatory damages which they would have been allowed to prove under a FIRREA claim, as set forth in 12 U.S.C.A. § 1821(e)(3)(A). Depending upon the amount of compensatory damages shown by plaintiffs, the recoupment could offset all of the damages claimed by defendant, but cannot exceed the amount of defendant's damages. Because the trial court erred by barring plaintiffs' affirmative defense and there are genuine issues of material fact regarding the amount of recoupment plaintiffs may be entitled to as an offset against defendant's claim for breach of the loan agreement, we reverse the trial court's order granting summary judgment and remand for further proceedings consistent with the opinion.

III.   Collateral Estoppel Effect

Next, plaintiffs argue that the trial court erred in not granting collateral estoppel effect to the foreclosure order entered by the Clerk of Court which found that Settlers Edge was not in default of the loan. Plaintiffs contend:

> Here, it is undisputed that Defendant dismissed the appeal of the Foreclosure Order, rendering it a final,

binding order. It is also undisputed that the Clerk determined that Settlers Edge was not in default, that the parties to the Foreclosure and this action are the same or are in privity with each other, and that entering the Second Order necessarily required finding Settlers Edge in default.

Moreover, there is no dispute that, at the time of the Foreclosure, the maturity date of the Note had passed, Settlers Edge had not repaid amounts otherwise due under the Note, and the Note had been declared in default by the FDIC. In Defendant's Motion and materials submitted in support, Defendant states no basis for default other than Settlers Edge's failure to pay the Note in full prior to the maturity date. . . . This case has remained substantially static, factually and legally, since the Foreclosure Order, and the Trial Court's determination that Settlers Edge was in default is inconsistent with the Foreclosure Order. The Trial Court erred, first, by entering the First Order denying collateral estoppel effect to the Foreclosure Order, and, second, by finding Settlers Edge in default in the Second Order despite the prior, contrary finding by the Clerk in the Foreclosure Order.

But based upon the prior appeal to this Court, we cannot find that the Clerk's foreclosure order may have any collateral estoppel effect. The issue actually decided by the Yancey County Clerk of Court is not clear from the foreclosure order, which contains conclusions that seem to go both ways. Nevertheless, we are bound by this Court's prior opinion regarding the foreclosure order:

The application of the preclusive doctrines of collateral estoppel and *res judicata* must be narrowly construed and cannot be left to uncertain inference. Here, given that the order denying foreclosure (1) did not include specific findings expressly determining that a material breach had occurred; and (2) did find that a valid debt

- 26 -

existed between Plaintiffs and the FDIC, *we are unable to conclude that the Clerk actually determined that a material breach had occurred.* Such a conclusion would force us to speculate as to the Clerk's thought processes in rendering its findings, which we are not permitted to do.

*Settlers Edge Holding Co., LLC, v. RES-NC Settlers Edge, LLC ("Settlers Edge I"),* 238 N.C. App. 198, 768 S.E.2d 66, 2014 WL 7149116, \*5, 2014 N.C. App. LEXIS 1291, \*12-13 (2014) (unpublished) (citations and quotation marks omitted) (emphasis added). This Court previously decided that the basis for the Clerk's order is unclear, and we are bound by that ruling. In addition, even assuming that a material breach occurred, as discussed above, this breach was a repudiation and plaintiffs are limited to asserting their affirmative defense and offsetting defendant's damages by recoupment. We therefore decline to address this issue further.

IV.    Summary Judgment

Finally, plaintiffs contend that the trial court erred in granting summary judgment in favor of defendant and denying summary judgment in favor of plaintiffs "due to its failure to consider the legal and undisputed factual merits of plaintiffs' affirmative defenses." As we have already concluded that the trial court had jurisdiction to consider plaintiffs' affirmative defenses and that the contract was effectively repudiated, we agree that the trial court should not have granted summary judgment in favor of defendants, and we reverse its order doing so. But this does not mean that we can grant summary judgment in favor of plaintiffs, since on remand

the trial court must consider the proper measure of offset for the defendant's breach of contract in recoupment.

V.      Conclusion

In sum, while we decline to find any collateral estoppel effect from the Clerk's prior order and cannot grant summary judgment in favor of plaintiffs at this time, we conclude that the FDIC effectively repudiated the contract and plaintiffs are entitled to raise the repudiation as an affirmative defense. But because the FDIC had a right to repudiate, plaintiffs' right to recover damages is limited. Since we have concluded that the trial court erred by barring plaintiffs' affirmative defense, and since there are genuine issues of material fact remaining in regards to the amount of recoupment plaintiffs may be entitled to as an offset against defendant's claim for breach of the loan agreement, we reverse the trial court's order granting summary judgment and remand for further proceedings consistent with this opinion to determine the amount of damages defendant may recover from plaintiffs, if any, for its breach of contract claim.

REVERSED AND REMANDED.

Judges ELMORE and DIETZ concur.