**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————————

Nos. 11-2708 AND 11-3249

————————————

JOSE TELLADO; MARIA TELLADO

v.

INDYMAC MORTGAGE SERVICES, a division of One
West Bank, FSB;
HOME FUNDING GROUP, LLC

IndyMac Mortgage Services,
Appellant

————————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. No. 2-09-cv-05022)
District Judge: Honorable Petrese B. Tucker

————————————

Argued on September 10, 2012

Before: SCIRICA, ROTH and BARRY, <u>Circuit Judges</u>

(Opinion filed: February 11, 2013)

Martin C. Bryce, Jr., Esquire **(Argued)**
Damian L. DiNicola, Esquire
Ballard Spahr
1735 Market Street
51st Floor
Philadelphia, PA   19103

        Counsel for Appellant
Justin K. Miller, Esquire

C. Paul Scheuritzel, Esquire
Larsson & Scheuritzel
1500 Market Street
Centre Square West, Suite 3510
Philadelphia, PA   19102

       Counsel for Appellant

Andrew J. Soven, Esquire
Reed Smith
1650 Market Street
2500 One Liberty Place
Philadelphia, PA   19103

Scott M. Michelman, Esquire **(Argued)**
Public Citizen Litigation Group
1600 20th Street, N. W.
Washington, D. C.  20009

Margaret E. Robinson, Esquire
Irwin L. Trauss, Esquire
Philadelphia Legal Assistance
42 South 15th Street
Suite 500
Philadelphia, PA   19102

       Counsel for Appellees

-------

O P I N I O N

-------

**ROTH**, Circuit Judge**:**

     This appeal is from the District Court's order to cancel a mortgage loan made by IndyMac Bank, FSB, to Jose and Maria Tellado.  After IndyMac failed and was placed into receivership, with the Federal Deposit Insurance Corporation (FDIC) as its receiver, the mortgage loan was purchased from the FDIC by OneWest Bank, FSB.  OneWest challenges the District Court's August 8, 2011, order directing OneWest to cancel the loan and refund to the Tellados all payments made

2

under the mortgage loan agreement. OneWest also challenges the $10,000 penalty that the District Court levied against OneWest for failing to comply with the District Court's order to produce its Chief Executive Officer (CEO) at trial. For the reasons that follow, we will reverse both the District Court's August 8, 2011, order and the penalty order. penalty order.

## I. FACTS

In June 2007, Jose Tellado heard a Spanish-language radio advertisement for mortgage refinancing services. When he called the number provided, he reached Carlos Enrique and spoke with him exclusively in Spanish to arrange a refinancing of their existing mortgage on their home at 519 Morris Street in Philadelphia, Pennsylvania. Enrique helped Tellado and his wife, Maria, with the submission of a loan application and arranged for a closing agent to visit the Tellados' home. Philip Bloom, a closing agent and notary acting as a representative of IndyMac, conducted the closing at the Tellados' home. The relevant loan documents which he provided to them, including the notice of the right to cancel, were in English. Oral communications between Bloom and the Tellados, who speak primarily Spanish, were conducted through Marcelina Fuster, the Tellados' daughter, who served as an interpreter. She translated Bloom's verbal instructions and his explanations of the loan documents.

The lender on the mortgage was IndyMac, a federally chartered savings bank. IndyMac subsequently failed, and on July 11, 2008, it was entered into FDIC receivership. On March 18, 2009, the FDIC transferred the Tellados' loan, in addition to other loans formerly owned by IndyMac, to OneWest under a Master Purchase Agreement (MPA). Pursuant to the MPA, OneWest assumed only certain liabilities.

On August 5, 2009, the Tellados sent a notice of cancellation to IndyMac Mortgage Services, a division of OneWest, stating that they sought to cancel the loan pursuant to Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201-7. In the notice, they explained that the basis for their cancellation was that

3

they had received all documents related to the mortgage, including the notice of the right to cancel, in English while all prior oral discussions relating to the transaction had been conducted in Spanish. They notified OneWest of their intent to file suit if they did not receive a response within ten days. When OneWest did not respond, the Tellados filed suit in Pennsylvania state court on August 24, 2009.[1] On October 27, 2009, they filed an amended complaint seeking a determination that the loan was void and that OneWest had forfeited the right to any further payment or, in the alternative, seeking triple damages based on the amount of the payments they had made on the loan or on the amount of the security interest retained in their home. On November 2, 2009, OneWest removed the case to the District Court.[2]

OneWest then filed a motion to dismiss under Rule 12(b)(6), a motion for summary judgment, and a motion to dismiss for lack of subject matter jurisdiction. The District Court denied all of these requests for relief. On November 3, 2010, the District Court scheduled the case for a bench trial beginning on November 8. In the scheduling order, the District Court also ordered the CEO of OneWest to appear at the trial.

After the bench trial, the District Court ruled in the Tellados' favor. The court found that the loan transaction, from the initial contact through the loan closing, was conducted in Spanish. The court, therefore, held that the UTPCPL, 73 P.S. § 201-7, governed the transaction because the Tellados had purchased mortgage refinancing services for a price in excess of twenty-five dollars. Under 73 P.S. § 201-7, the Tellados could cancel the transaction within three days of receiving a valid notice of the right to cancel in the same

---

[1] The named defendant in the suit was formally IndyMac Mortgage Services, the division of OneWest that legally held the Tellados' mortgage.

[2] OneWest also responded to the Tellados in a letter dated October 15, 2009, denying their request to rescind the mortgage, and on November 3, 2009, it sent them a notice of its intention to foreclose.

4

language as that principally used in the oral sales presentation. Because IndyMac had not provided notice in Spanish, the language of the loan transaction, the District Court held that IndyMac had failed to provide proper notice and the three-day cancellation period had never begun to run. The District Court found that the written cancellation the Tellados provided to OneWest on August 9, 2009, was effective and binding. The District Court ordered OneWest to refund to the Tellados all payments that had been made on the mortgage, terminate its security interest in the Tellados' home, and return any negotiable instrument executed in connection with the transaction. The court also permitted the Tellados to keep the principal that had originally been lent to them by IndyMac.

Subsequently, without further notice or hearing, the District Court on December 1, 2010, imposed a $10,000 penalty on OneWest under Rule 16(f)(1)(C) because OneWest's CEO had not appeared at trial as provided for in the court's scheduling order.[3] OneWest appealed. It argues that the District Court erred in multiple ways in finding for the Tellados after trial and in denying OneWest's motions to dismiss and for summary judgment. OneWest also contends that the District Court erred in imposing a $10,000 penalty because OneWest had failed to follow the order requiring the presence of its CEO at trial.

## II. DISCUSSION

We have appellate jurisdiction over this appeal of the District Court's final order under 28 U.S.C. § 1291. "On the appeal of a bench trial, we review a district court's findings of

---

[3] OneWest filed a Motion to Alter, Amend or Otherwise Clarify the December 1, 2010, Order and to Stay Enforcement of the Sanction on December 29, 2010. On June 17, 2011, the District Court entered an order stating that the penalty was to be borne solely by OneWest and not by its CEO. It also denied OneWest's request to stay the penalty. OneWest appealed the December 1, 2010, order on June 22, 2011, and paid the penalty on June 27, 2011. OneWest also appealed the penalty in its August 18, 2011, appeal of the District Court's August 8, 2011, order.

fact for clear error and its conclusions of law *de novo*." *McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 147 (3d Cir. 2009).

## A. Subject Matter Jurisdiction

OneWest argues that the District Court lacked subject matter jurisdiction over the Tellados' claim based on the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA). Whether subject matter jurisdiction exists is "a legal question over which we exercise plenary review." *Nat. Union Fire Ins. Co. of Pittsburgh v. City Savings, F.S.B.*, 28 F.3d 376, 383 (3d Cir. 1994).

FIRREA, which was passed in response to the savings and loan crisis of the 1980s, gives the FDIC the authority to act as receiver or conservator for failed institutions. *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1211 (9th Cir. 2012). The statute also creates an administrative claims process for institutions in receivership and limits judicial review of certain claims. *See* 12 U.S.C. § 1821(d)(3)-(13). Section 1821(d)(13)(D) provides:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D). We have interpreted section 1821(d)(13)(D) to be a "statutory exhaustion requirement: in order to obtain jurisdiction to bring a claim in federal court, one must exhaust administrative remedies by submitting the claim to the receiver in accordance with the administrative scheme for adjudicating claims detailed in § 1821(d)." *Nat. Union Fire Ins. Co. of Pittsburgh*, 28 F.3d at 383; *see also*

6

*Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 391 (3d Cir. 1991).

The District Court determined that it had subject matter jurisdiction over the Tellados' claim against OneWest without directly addressing whether the jurisdictional bar in section 1821(d)(13)(D) applied.[4]  OneWest argues that section 1821(d)(13)(D) precluded the District Court from exercising jurisdiction over this claim because the claim is predicated upon an act or omission of IndyMac, specifically IndyMac's failure at closing to provide notice in Spanish of the right to cancel, and because the Tellados failed to exhaust their administrative remedies under FIRREA.

We agree.  Under section 1821(d)(13)(D)(ii), courts do not have jurisdiction over a "claim relating to any act or omission of such institution or the [FDIC] as receiver." 12 U.S.C. § 1821(d)(13)(D)(ii).  We have interpreted "such institution" in section 1821(d)(13)(D)(ii) to refer back to the "depository institution for which the [FDIC] has been appointed receiver" which is identified in section 1821(d)(13)(D)(i).  *Rosa*, 938 F.2d at 392.  Here, the Tellados' claim against the purchasing bank, OneWest, relates to an omission of the depository institution, IndyMac. We have not previously addressed whether FIRREA's jurisdictional bar applies to claims against a purchasing bank based on the conduct of the depository institution or receiver, but several other circuits have concluded that it does apply. *See Benson*, 673 F.3d at 1214; *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1144 (D.C. Cir. 2011); *Vill. of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 386-87 (6th Cir. 2008).

In *Benson*, the Ninth Circuit Court of Appeals determined that claims brought against a purchasing bank, based on the failed bank's alleged malfeasance in connection with a Ponzi scheme, were jurisdictionally barred under section 1821(d)(13)(D) because "[t]he bulk of plaintiffs'

---

[4] The District Court made an oral ruling from the bench that it did have jurisdiction and, on November 30, 2010, denied as moot OneWest's motion to dismiss for a lack of subject matter jurisdiction.

claims plainly qualify as '*functionally*, albeit not *formally*' against a failed bank." 673 F.3d at 1215 (citing *Am. Nat'l Ins. Co.*, 642 F.3d at 1144 ("Where a claim is *functionally*, albeit not *formally*, against a depository institution for which the FDIC is receiver, it is a 'claim' within the meaning of FIRREA's administrative claims process.")). The court further noted that "[c]laims of independent misconduct by an institution that purchases a failed bank are not covered by FIRREA's exhaustion requirement" but found that the plaintiffs had not adequately pled a claim based on the assuming bank's independent, post-purchase conduct. *Id.* at 1215-17.

As in *Benson*, the Tellados' claim is functionally, albeit not formally, against IndyMac. The Tellados characterize their claim as a claim against OneWest for its own misconduct, pointing to OneWest's failure to cancel the loan in response to the Tellados' August 2009 notice of cancellation. However, as the District Court correctly held, the Tellados' notice of cancellation was valid only because IndyMac had failed to provide proper notice of the right to cancel and as a result the cancellation period had not begun to run. Without IndyMac's wrongdoing, the Tellados would have no right to cancel and therefore no claim. Thus, the Tellados' claim is not a claim of independent misconduct by OneWest; rather, it relates to an act or omission of the depository institution, IndyMac, and is, therefore, jurisdictionally barred under section 1821(d)(13)(D)(ii).

The Tellados contend, however, that their claim is based on OneWest's failure to honor their August 2009 cancellation demand. Thus, they claim, it is not susceptible of resolution through FIRREA's administrative process and is not a claim within the meaning of section 1821(d)(13)(D)(ii). The Tellados attempt to bolster this argument with the fact that the deadline to present an administrative claim under FIRREA could have expired as early as October 2008, before their August 2009 cancellation demand.

However, as already established, their claim is wholly dependent upon IndyMac's wrongdoing. In *Village of Oakwood*, the Sixth Circuit Court of Appeals, holding that claims asserted against the assuming bank but "directly

8

related to acts or omission of the FDIC as receiver of Oakwood" were jurisdictionally barred, reasoned that "permit[ting] claimants to avoid [the] provisions of (d)(6) and (d)(13) by bringing claims against the assuming bank . . . would encourage the very litigation that FIRREA aimed to avoid." 539 F.3d at 386 (internal quotation marks omitted). The D.C. Circuit Court of Appeals similarly cautioned in *American National Insurance Company* that "plaintiffs cannot circumvent FIRREA's jurisdictional bar by drafting their complaint strategically." 642 F.3d at 1144. The fact that the deadline for bringing a claim through the administrative process may have passed does not convert the Tellados' claim into a claim "not susceptible of resolution through the claims procedure." Because the Tellados' claim is functionally against IndyMac, it is a claim within the meaning of FIRREA's administrative process. The Tellados cannot bypass the requirements of FIRREA by bringing the claim against OneWest.

For these reasons, the entirety of the Tellados' claim is jurisdictionally barred under section 1821(d)(13)(D), and the District Court did not have subject matter jurisdiction over it.[5]

**B. Penalty Order**

*1. Jurisdiction*

Because we find the District Court lacked subject matter jurisdiction over the underlying matter, we must now determine whether the District Court also lacked jurisdiction to impose the $10,000 penalty against OneWest for failing to comply with the order to produce its CEO at trial. "A final determination of lack of subject-matter jurisdiction of a case in a federal court . . . does not automatically wipe out all proceedings had in the district court at a time when the district court operated under the misapprehension that it had

___

[5] Because we find section 1821(d)(13)(D) bars jurisdiction here, we will not go on to determine if the MPA preempts Pennsylvania law or if the Home Owners' Loan Act and its implementing regulations, 12 C.F.R. §§ 560.2(a) and (b), preempt the Tellados' claim.

jurisdiction." *Willy v. Coastal Corp.*, 503 U.S. 131, 137 (1992); *see also In re Orthopedic "Bone Screw" Prod. Liab. Litig.,* 132 F.3d 152, 156 (3d Cir. 1997) ("[D]espite the inability of a court to decide the merits of a case over which it lacks jurisdiction, a court does have the inherent authority both over its docket and over the persons appearing before it.").

Sanctions have been upheld in the absence of subject matter jurisdiction when the sanctions order is collateral to the merits. *See Willy*, 503 U.S. at 138 (upholding Rule 11 sanctions in a case in which the district court was later found to lack subject matter jurisdiction because the sanctions order did not "raise the issue of a district court adjudicating the merits of a 'case or controversy' over which it lacks jurisdiction"); *In re Orthopedic "Bone Screw" Prod. Liab. Litig.,* 132 F.3d at 157 (vacating a sanctions order dismissing the case with prejudice when the district court was later determined to lack subject matter jurisdiction because the dismissal with prejudice had "the effect of adjudicating the merits of the case" but upholding a $500 monetary sanction against a litigant for failure to appear at a hearing). However, a civil contempt order would fall in the absence of subject matter jurisdiction. *See U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 80 (1988) (holding that a civil contempt order for refusal to comply with a subpoena would fall if the district court lacked subject matter jurisdiction). In *Willy*, the Supreme Court distinguished between a civil contempt order and a Rule 11 sanction, noting that "[c]ivil contempt is designed to force the contemnor to comply with an order of the court" whereas "Rule 11 is designed to punish a party who has already violated the court's rules." *Willy*, 503 U.S. at 139. On that basis, the Court reasoned that a civil contempt order "should fall with a showing that the court was without authority to enter the decree," but a Rule 11 sanction, grounded in "[t]he interest in having the rules of procedure obeyed," should not. *Id.*

Here, the penalty order for defying the District Court's order requiring the presence of OneWest's CEO at trial is collateral to the merits of the underlying action. Additionally, although issued under Rule 16(f)(1)(C), the penalty order is analogous to the Rule 11 sanctions in *Willy* because it was

10

designed to punish OneWest for its past violation of the order requiring the CEO's presence at trial. *See Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1553 (10th Cir. 1996) (finding sanctions pursuant to Rules 16(f) and 37(b) analogous to Rule 11 sanctions in *Willy* and thus enforceable in the absence of subject matter jurisdiction). Issued after the conclusion of the trial, the penalty order could not effectively coerce compliance with an order requiring the CEO's presence *at trial* and thus is unlike a civil contempt order.

For these reasons, we find that the penalty order does not fall away based on the District Court's lack of subject matter jurisdiction over the underlying matter.

### 2. Due Process

OneWest challenges the penalty order on several other grounds. We address OneWest's argument that the penalty order violates due process.

We review sanctions orders for abuses of discretion, but "when the procedure the district court uses in imposing sanctions raises due process issues of fair notice and the right to be heard . . ., our review is plenary." *Martin v. Brown*, 63 F.3d 1252, 1262 (3d Cir. 1995). "A finding of contempt, even under the auspices of Rule 16, must satisfy due process requirements. . . . Due process requires that a potential contemnor be given notice and a hearing regardless of whether the contempt is civil or criminal in nature." *Newton v. A.C. & S., Inc.,* 918 F.2d 1121, 1127 (3d Cir. 1990) (internal citations omitted). In *Newton,* we held that "a court may not find a party or counsel in civil contempt for settling a case after a deadline fixed by the court without affording them their due process rights of adequate notice and a prior hearing." *Id.* at 1129.

Here, the District Court imposed the $10,000 penalty without providing the parties notice or a hearing on the issue. The District Court heard argument regarding OneWest's failure to comply with the order requiring the CEO's presence at trial but did not issue the penalty order at that time or give notice of a possible penalty then or at any time prior to issuing the order. Nor was there a separate hearing on the

11

issue of the penalty. Accordingly, the District Court violated due process requirements by not giving OneWest notice or the opportunity to be heard.

We conclude that the penalty must be reversed on this basis. Normally, we would vacate the order and remand the case to the District Court for further consideration of the penalty. However, we see nothing in the facts of this case that would justify a penalty. Therefore, the penalty order cannot stand.

## III. <u>CONCLUSION</u>

For the foregoing reasons, we will reverse the District Court's Order of August 8, 2011, and the penalty order.